**SWEET et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3676.

Circuit Court of Appeals, First Circuit.

May 29, 1941.

John T. Noonan and Herrick, Smith, Donald & Farley, all of Boston, Mass. (Oscar A. Schlaikjer and Conrad W. Oberdorfer, both of Boston, Mass., of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is an unusual petition, wherein the taxpayers have taken heart from a recent decision of the Supreme Court and seek to reopen an old tax case which was decided against them in 1939. Able briefs have been filed in favor of and in opposition to the petition.

In their joint return for the calendar year 1933 the petitioner Maude W. Sweet and her husband, since deceased, deducted the net losses sustained by the wife upon sales and exchanges of noncapital assets in the taxable year from the net gains of the

husband upon like sales and exchanges. The Commissioner disallowed this deduction and on May 22, 1936, gave notice of a deficiency against the taxpayers on the ground that § 23(r) of the Revenue Act of 1932, 47 Stat. 183, 26 U.S.C.A. Int.Rev. Acts, page 493, did not sanction such a deduction. A petition was duly filed before the Board of Tax Appeals asking for a redetermination of the deficiency. On June 30, 1938, the Board entered its decision affirming the Commissioner's determination, and adjudging "that there is a deficiency of $70,816.09 in income tax for 1933". Thereupon the taxpayers petitioned this court for a review of the Board's decision. On March 2, 1939, we affirmed the decision of the Board, Sweet v. Commissioner, 1 Cir., 102 F.2d 103, upon the authority of a case in the Second Circuit, Pierce v. Commissioner, 100 F.2d 397, 121 A.L.R. 647. Thereafter the taxpayers duly applied to the Supreme Court of the United States for a writ of certiorari, but that court, on May 1, 1939, denied the writ. Sweet v. Commissioner, 307 U.S. 627, 59 S.Ct. 829, 83 L.Ed. 1510.

In two later cases, Helvering v. Janney (Gaines v. Helvering), decided December 9, 1940, reported together in 311 U.S. 189, 61 S.Ct. 241, 85 L.Ed. ——, 131 A. L.R. 980, the Supreme Court construed the comparable provision of the Revenue Act of 1934, 48 Stat. 714, 26 U.S.C.A. Int.Rev. Acts, page 664 et seq., in a manner which we may assume to be in square conflict with the interpretation we put upon § 23(r) of the Act of 1932. Because of these later pronouncements the taxpayers seek to reopen a litigation that was supposed to have been finally terminated when the Supreme Court denied their petition for certiorari in May, 1939.

Even apart from special limitations in the revenue act, we probably would have no power to recall our mandate passed down at a previous term. Nachod v. Engineering & Research Corp., 2 Cir., 108 F.2d 594. This is not denied by the taxpayers. Further, they concede that the outstanding mandate of this court, commanding further proceedings in conformity with our decree of affirmance, constitutes an obstacle which now prevents the Board of Tax Appeals from entertaining a motion to reopen and revise its decision. But they assert that this obstacle will be removed if this court grants them leave to file such a motion before the Board. The petition now before

us prays such leave. Petitioners invoke as an analogy the filing of a bill of review in the trial court after affirmance of a decree on appeal, pursuant to leave of the appellate court granted at a subsequent term. National Brake & Electric Co. v. Christensen, 254 U.S. 425, 431, 41 S.Ct. 154, 65 L. Ed. 341; In re Gamewell Fire-Alarm Tel. Co., 1 Cir., 73 F. 908.

It is contended by the Government that the matter is controlled by specific provisions of the revenue act. We agree.

Section 272(b) and (h) of the Revenue Act of 1932, 47 Stat. 169, 234–35, 26 U.S. C.A. Int.Rev.Acts, pages 559, 560, reads, with italics added:

"(b) Collection of Deficiency Found by Board. If the taxpayer files a petition with the Board, the entire amount redetermined as the deficiency by the *decision of the Board which has become final* shall be assessed and shall be paid upon notice and demand from the collector. No part of the amount determined as a deficiency by the Commissioner but disallowed as such by the *decision of the Board which has become final* shall be assessed or be collected by distraint or by proceeding in court with or without assessment."

"(h) Final Decisions of Board. For the purposes of this title the date on which a decision of the Board becomes final shall be determined according to the provisions of section 1005 of the Revenue Act of 1926."

Again, § 322 of the same act, 47 Stat. 242–43, 26 U.S.C.A. Int.Rev.Acts, page 571, provides (italics added):

"(a) Authorization. Where there has been an overpayment of any tax imposed by this title, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer.

\* \* \*

"(c) Effect of Petition to Board. If the Commissioner has mailed to the taxpayer a notice of deficiency under section 272(a) and if the taxpayer files a petition with the Board of Tax Appeals within the time prescribed in such subsection, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the tax-

payer for the recovery of any part of such tax shall be instituted in any court except—

"(1) As to overpayments determined by a *decision of the Board which has become final;* and

"(2) As to any amount collected in excess of an amount computed in accordance with the *decision of the Board which has become final;* and

\* \* \*

"(d) Overpayment Found by Board. If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the *decision of the Board has become final,* be credited or refunded to the taxpayer. \* \* \*"

Therefore the case hinges on whether the Board's decision of June 30, 1938, has become "final" within the meaning of the revenue act; if it has, then § 272(b) requires that the amount of the deficiency so determined shall be assessed and shall be paid upon notice and demand from the Collector, and assuming that the deficiency tax has since been paid, § 322(c) expressly forbids the Commissioner to make any credit or refund in respect of the tax for the taxable year in question.

In § 1005(a) of the Revenue Act of 1926, 44 Stat. 110, 111, 26 U.S.C.A. Int. Rev.Acts, page 314 (now 26 U.S.C.A. Int.Rev.Code, § 1140), Congress set out in meticulous detail the dates on which decisions of the Board of Tax Appeals become final. This section is copied in full in the footnote.[1] Section 1005(a) (3) fits the case at bar like a glove. It is there provided that the decision of the

[1] "Sec. 1005. (a) The decision of the Board shall become final—

"(1) Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time; or

"(2) Upon the expiration of the time allowed for filing a petition for certiorari, if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals and no petition for certiorari has been duly filed; or

"(3) Upon the denial of a petition for certiorari, if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals; or

"(4) Upon the expiration of thirty days from the date of issuance of the mandate of the Supreme Court, if such Court directs that the decision of the Board be affirmed or the petition for review dismissed.

"(b) If the Supreme Court directs that the decision of the Board be modified or reversed, the decision of the Board rendered in accordance with the mandate of the Supreme Court shall become final upon the expiration of 30 days from the time it was rendered, unless within such 30 days either the Commissioner or the taxpayer has instituted proceedings to have such decision corrected to accord with the mandate, in which event the decision of the Board shall become final when so corrected.

"(c) If the decision of the Board is modified or reversed by the Circuit Court of Appeals, and if (1) the time allowed for filing a petition for certiorari has expired and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the Court has been affirmed by the Supreme Court, then the decision of the Board rendered in accordance with the mandate of the Circuit Court of Appeals shall become final on the expiration of 30 days from the time such decision of the Board was rendered, unless within such 30 days either the Commissioner or the taxpayer has instituted proceedings to have such decision corrected so that it will accord with the mandate, in which event the decision of the Board shall become final when so corrected.

"(d) If the Supreme Court orders a rehearing; or if the case is remanded by the Circuit Court of Appeals to the Board for a rehearing, and if (1) the time allowed for filing a petition for certiorari has expired, and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the decision of the Board rendered upon such rehearing shall become final in the same manner as though no prior decision of the Board had been rendered.

"(e) As used in this section—

"(1) The term 'Circuit Court of Appeals' includes the Court of Appeals of the District of Columbia;

"(2) The term 'mandate,' in case a mandate has been recalled prior to the expiration of 30 days from the date of issuance thereof, means the final mandate."

Board becomes final "Upon the denial of a petition for certiorari, if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals." Thus the Board's decision became final when the Supreme Court denied certiorari on May 1, 1939, or perhaps upon the lapse of twenty-five days thereafter, during which period, under the rules of the Supreme Court, the petitioners might have asked for a rehearing. We add this qualification because it might possibly be held that a petition for certiorari is not finally denied within the meaning of § 1005 (a) (3) until the lapse of the brief stated period during which the Supreme Court, by its rules, invites a petition for rehearing. Cf. Ortiz v. Public Service Commission, 1 Cir., 108 F.2d 815, 816.

The important case is Helvering v. Northern Coal Co., 293 U.S. 191, 55 S.Ct. 3, 79 L.Ed. 281, involving an interpretation of § 1005(a) (4) of the Revenue Act of 1926, which provides that a Board decision becomes final "Upon the expiration of thirty days from the date of issuance of the mandate of the Supreme Court, if such Court directs that the decision of the Board be affirmed or the petition for review dismissed." In that case this court had affirmed a decision of the Board holding that there was no collectible deficiency. The Supreme Court affirmed our judgment by an equally divided court and its mandate issued on November 29, 1933. Thereafter, on March 5, 1934, Helvering v. Newport Co., 291 U.S. 485, 54 S.Ct. 480, 78 L.Ed. 929, was decided. Contending that in this case the court decided in the Government's favor the precise question which we had ruled against the Government in Helvering v. Northern Coal Co., the Government on May 21, 1934, filed a petition for rehearing in the latter case. Since this petition was filed at the same term of court, there is no doubt that the Supreme Court ordinarily would have had power to set aside or modify its judgment. But the court held that under § 1005(a) (4) it had no power to entertain a petition for rehearing after the expiration of 30 days from the date of issuance of its mandate.[2]

In effect, the present petitioners must contend that the Government in the Northern Coal Co. case misconceived its remedy; that instead of applying to the Supreme Court for a rehearing it should have petitioned the Supreme Court for leave to present to the Board of Tax Appeals a motion to reopen and revise its decision. We cannot believe that this would have put the Government in any better case. If the power of the Supreme Court to revise its judgment of affirmance is thus so sharply limited, it would be strange indeed to find that the Board is given jurisdiction to accomplish what the Supreme Court could not do, by the simple expedient of entertaining at any indefinite time in the future a motion to revise its decision.

Under § 1005(a) (1) the decision of the Board becomes final "Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time". This certainly is more than a mere cross reference to the provision elsewhere in the statute limiting the time for filing in the

---

[2] Neuberger v. Commissioner, 310 U. S. 655, 60 S.Ct. 1085, 84 L.Ed. 1419; Id., 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. ——, does not in any way qualify the decision in the Northern Coal Co. case. The situation was wholly different. In the Neuberger case the Circuit Court of Appeals had not affirmed the Board's decision, so § 1005 (a) (3) was inapplicable. From Neuberger v. Commissioner, 2 Cir., 104 F.2d 649, 650, it appears that the Circuit Court of Appeals had remanded the cause "for modification of the Board's order in conformity with this opinion". On January 2, 1940, the Supreme Court, 308 U.S. 623, 60 S.Ct. 379, 84 L.Ed. 520, denied the taxpayer's petition for certiorari. At that point, if nothing more had happened, the case would have had to go back to the Board for modification in accordance with the mandate of the Circuit Court of Appeals; and in this situation § 1005 (c) (2) provides that "the decision of the Board rendered in accordance with the mandate of the Circuit Court of Appeals shall become final on the expiration of 30 days from the time such decision of the Board was rendered * * *." Within the 25 days after January 2, 1940, allowed by the Supreme Court for petitions for rehearing, the taxpayer filed such a petition. On May 27, 1940, 310 U.S. 655, 60 S.Ct. 1085, 84 L.Ed. 1419, the court granted the petition for rehearing, vacated its order denying certiorari, and granted the writ. Since no decision of the Board had become "final" within the terms of § 1005, the Supreme Court of course could exercise its normal power to entertain a petition for rehearing.

circuit court of appeals a petition for review. By parity of reasoning from Helvering v. Northern Coal Co., 293 U.S. 191, 55 S.Ct. 3, 79 L.Ed. 281, supra, it is clear that the power of the Board to entertain a petition for rehearing is limited to the three months during which a petition for review might be filed in the circuit court of appeals; thereafter, no petition for review having been filed, the Board's decision becomes final. We think J. S. Rippel & Co. v. Commissioner, 36 B.T.A. 789, was correctly decided; and that La Floridienne J. Buttgenbach v. Commissioner, 5 Cir., 63 F.2d 630, is supportable, if at all, upon the peculiar circumstances emphasized by the court at page 631. In other words, "final" as consistently used throughout § 1005 means that at the indicated point of time the decision of the Board must stand as rendered, without power in the Board or in the courts to modify it thereafter.

The comment of the Supreme Court in Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 726, 727, 49 S.Ct. 499, 503, 73 L.Ed. 918, is apposite:

"By section 1005 * * *, the decision of the Board is to become final in respect to all the numerous instances which in the course of the review may naturally end further litigation. In the provisions of these sections, the legislation prescribes minute details for the enforcement of the judgments that are the result of these petitions for review in the several courts vested with jurisdiction over them. The complete purpose of Congress to provide a final adjudication in such proceedings, binding all the parties, is manifest * * *."

From a reading of § 1005 as a whole it is apparent that the old chancery practice with reference to bills of review has no place in the statutory scheme regulating the procedure for adjudicating tax disputes instituted before the Board of Tax Appeals.[3]

The reasons which persuaded Congress to make such precise provision as to the dates on which decisions of the Board become final are set forth in the Committee reports in almost identical language. H. Rep. 1, 69th Cong., 1st Sess. (1925) 20–21; S. Rep. 52, 69th Cong., 1st Sess. (1926) 37–38. The House report significantly states:

"Court review.—Finality of decisions.— Section 916 [which became § 1005] prescribes the date on which a decision of the board (whether or not appeal thereon is had) is to become final. Inasmuch as the statute of limitations upon assessments and suits for collection, both of which are suspended during review of the commissioners' determination, commences to run upon the day upon which the board's decision becomes final, and inasmuch as the power to make a jeopardy assessment terminates upon the commencement of proceedings to review a decision of the board, it is of the utmost importance that this time be specified as accurately as possible. *In some instances in order to achieve this result the usual rules of law applicable in court procedure must be changed. For example, the power of the court of review to recall its mandate is made to expire 30 days from the date of issuance of the mandate.*" [Italics added.]

Since the Board's decision has now become "final", in the sense that the tax consequences of its decision became irrevocably fixed upon denial of the petition for certiorari, we cannot by order enlarge the statutory jurisdiction of the Board, and hence we have no jurisdiction to entertain the present petition for leave to apply to the Board for a revision of its decision.

But even if we had discretion in the matter, we should deny the petition. Incalculable confusion would result from a general reopening of old tax cases because of a claimed conflict with supervening court decisions. Because the law is not quite an exact science, litigants sometimes have the misfortune that their particular case came up for decision too soon or too late to get the benefit of a controlling decision. The situation is not peculiar to tax litigation, for litigants have sometimes won or lost cases on doctrines of torts, contracts, or conflict of laws later overturned. But in litigation affecting the public revenue the need of finality is the more obvious, from the taxpayer's, as well as from the Government's, point of view. If the argument of the present petitioners were accepted, the

[3] Even under the old chancery practice, it is far from clear that a bill of review would lie to revise an old decree merely on the ground that a subsequent decision of an appellate court in another case had established a different rule of law. Compare Scotten v. Littlefield, 235 U.S. 407, 35 S.Ct. 125, 59 L.Ed. 289, with John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475.

Government could quite as legitimately apply to the Board to redetermine a case decided in the taxpayer's favor years ago on grounds now appearing to be untenable in the light of later decisions of the courts. See J. S. Rippel & Co. v. Commissioner, 36 B.T.A. 789, 790, 791. In such an eventuality the taxpayer's cry of dismay would be loud and long, and not without reason. Even if we had the power it seems to us that we ought not to venture into this uncharted field, in the absence of legislation by Congress carefully devised, within practicable limits, to correct inequalities in the application of the tax laws which occasionally result from the uncertainties of litigation.[4]

The petition is denied.

---

[4] The Judicial Conference of Senior Circuit Judges at a session convened on January 21, 1941, appointed a committee "to consider legislation with respect to the review or rehearing within a limited time of cases decided by inferior courts in conflict with a later decision of the Supreme Court". And see Surrey, The Supreme Court and The Federal Income Tax, 35 Ill.L.Rev. 779, 812, 813.