**HANOVER INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 89–1101.

United States Court of Appeals, First Circuit.

Heard May 3, 1989.

Decided Aug. 7, 1989.

As Amended Sept. 18, 1989.

Harry T. Daniels with whom Betsy Hecker, William H. Paine and Hale and Dorr, Boston, Mass., were on brief, for plaintiff, appellant.

Charles Bricken, Tax Div., Dept. of Justice, with whom James I.K. Knapp, Acting Asst. Atty. Gen., Peter A. Mullin, Acting U.S. Atty., Gary R. Allen and Gilbert S. Rothenberg, Tax Div., Dept. of Justice, Washington, D.C., were on brief, for U.S.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Judge Learned Hand once wrote that words can be "chameleons, which reflect the color of their environment...." *Commissioner v. National Carbide Corp.*, 167 F.2d 304, 306 (2d Cir.1948). That was hardly news to generations of lawyers and judges, many of whom have learned, often at some cost, that the same language, used in different settings, may mean very different things. While the mechanical provisions of the Internal Revenue Code may seem to comprise an improbable habitat for such linguistic lizards, the portion of the Code's finality provision which we are called upon to construe today might well serve as an object lesson to those who persist in believing a word is a word is a word.

## I

Plaintiff-appellant Hanover Insurance Company[1] brought this action in hot pursuit of a tax refund. While the origins of the pecuniary controversy stretch back nearly three decades (to 1959), we rehearse only those fragments of the background that are essential to place the present problem in perspective.

Subsequent to the filing of appellant's 1960 corporate return (at the times material hereto, appellant's tax year was the calendar year), the Internal Revenue Service (IRS) decided that taxes for 1959 and 1960 had likely been underpaid. During ensuing negotiations, Hanover agreed to a series of extensions, the net effect of which was to defer the deadline for deficiency assessment with respect to those taxes until mid–1971. On December 10, 1970, a formal notice of deficiency was mailed, asserting a tax shortfall of close to $900,000 (roughly half attributable to 1959 and half to 1960).

The company did not go gently into this dear night; it contested the alleged deficiency and asked that its indebtedness be refigured. The Tax Court acted upon Hanover's petition, 69 T.C. 260 (1977), striking the deficiency for 1959 and slightly reducing the 1960 deficiency. We affirmed, 598 F.2d 1211 (1st Cir.1979), and the company's ensuing petition for certiorari was thereafter denied, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979). On July 23, 1980, the IRS assessed Hanover $690,207.83 in respect to 1960, a sum which represented the deficiency calculated by the Tax Court ($331,644.28) plus interest ($358,562.55). The government eventually collected upward of $1,000,000 (additional interest having accrued in the meantime).

Appellant filed a timely administrative claim for refund. When rebuffed, it brought suit in the district court under 28 U.S.C. § 1346(a)(1). This appeal followed the district court's entry of judgment in favor of the United States. The single issue before us concerns whether the assessment was timely.

## II

As a general rule, absent fraud or agreed extensions, the IRS must assess taxes assertedly due within three years after a return is filed. *See* 26 U.S.C. § 6501(a). So long as "a proceeding in respect of [a] deficiency is [seasonably]

---

**1.** By virtue of a 1961 merger, appellant became the successor in interest to Massachusetts Bonding and Insurance Co. For our purposes, any distinction between the two corporations is im-material. Thus, we refer to them collectively and interchangeably as "Hanover" or "the company."

placed in the docket of the Tax Court," 26 U.S.C. § 6503(a)(1), the mailing of a deficiency notice suspends running of the limitation period "until the decision of the Tax Court becomes final[ ], and for 60 days thereafter." *Id.*

In this case, the underlying facts are undisputed. The deficiency notice was mailed on December 10, 1970. At that point 202 days of the assessment period remained open vis-a-vis Hanover's 1960 taxes. A timeous Tax Court petition ensued, freezing the assessment period. *See* 26 U.S.C. § 6503(a). Given the appellate process invoked here, the Tax Court decision became final only "[u]pon [the Supreme Court's] denial of a petition for certiorari, ... the decision of the Tax Court ha[ving] been affirmed ... by the United States Court of Appeals[.]" 26 U.S.C. § 7481(a)(2)(B). Thus, the assessment period resumed its march 60 days after "denial" of the company's certiorari petition. *See* 26 U.S.C. §§ 6501(a), 7481(a)(2)(B).

To this juncture, the parties agree entirely. There is, of course, a rub: the Supreme Court issued an order denying certiorari on October 15, 1979; the time for seeking reconsideration passed; the IRS served its assessment on July 23, 1980. This chronology makes it imperative to ask when, for purposes of section 7481(a)(2)(B), the "denial" of certiorari occurred. There are two candidates, one nominated by each party:

1. If—as Hanover contends—the denial took place contemporaneous with the entry of the Supreme Court's order, then the Tax Court's decision became final on the same date (October 15, 1979) and the count resumed 60 days later (December 14, 1979). On that hypothesis, the assessment period would have expired 202 days thereafter (July 3, 1980); consequently, the assessment, made on July 23, would have been untimely—and plaintiff's suit for a refund must be honored.

2. If—as the government contends—the denial did not occur until the expiration of the time within which Hanover, had it so chosen, might have petitioned as of right for rehearing of the order refusing certiorari,[2] then the Tax Court decision did not become final until November 9, 1979 and the limitation period did not run its course until July 28, 1980. On that premise, the July 23 assessment was timely—and plaintiff's suit was properly dismissed.

Refined to bare essence, these conflicting contentions require that we determine whether a decision of the Tax Court, affirmed by the court of appeals, becomes final for purposes of section 6501(a) upon denial of a certiorari petition or only upon expiration of the allotted period within which, following denial of certiorari, reconsideration may be requested. Despite the unvarnished language of 26 U.S.C. § 7481(a)(2)(B), we hold—as did the court below—that the curtain of finality falls only when the petitioner's opportunity to play the encore has passed. Accordingly, we affirm.

### III

Section 7481 of the Internal Revenue Code has been virtually unchanged for approximately six decades. *Compare id. with* 26 U.S.C. § 1140 (1940) *and* § 1005(a), Revenue Act of 1926, ch. 27, 44 Stat. 110, 111 (1926); *see also* H.R.Rep. No. 1337, 83d Cong., 2d Sess. 434, *reprinted in* 1954 U.S. Code Cong. & Admin.News 4017, 4582 ("no material change" in respect to section between 1940–1954); S.Rep. No. 20, 76th Cong., 1st Sess., *reprinted in* 1939–2 C.B. 534, 535 (similar, respecting period 1926–1940). The law's objective is crystal clear:

---

**2.** Under the applicable rule, the incremental time amounts to an extra 25 days:

.1. A petition for rehearing of any judgment or decision other than one on a petition for writ of certiorari, shall be filed with 25 days after the judgment or decision, unless the time is shortened or enlarged by the court or a Justice....

.2. A petition for rehearing of an order denying a petition for writ of certiorari shall comply with all the form and filing requirements of paragraph .1, but its grounds must be limited to intervening circumstances of substantial or controlling effect or to other substantial grounds not previously presented....

....

.4. Consecutive petitions for rehearings, and petitions for rehearing that are out of time under this Rule, will not be received.

Sup.Ct.R. 51.

"to determine definitely the date on which the statute of limitations, suspended during appeal, begins to run again...." *R. Simpson & Co. v. Commissioner,* 321 U.S. 225, 228, 64 S.Ct. 496, 497–98, 88 L.Ed. 688 (1944). Courts have nearly unanimously, albeit somewhat sporadically, interpreted the statutory provision to mean that a decision of the Tax Court becomes final only when, as a practical matter, it has become unalterable, *Kenner v. Commissioner,* 387 F.2d 689, 690–91 (7th Cir.), *cert. denied,* 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968); that is, when the courts no longer possess power to reopen the matter.[3] *See, e.g., Lasky v. Commissioner,* 235 F.2d 97, 98–99 (9th Cir.1956), *aff'd,* 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957); *White's Will v. Commissioner,* 142 F.2d 746, 748–49 (3d Cir.1944); *Monjar v. Commissioner,* 140 F.2d 263, 265 (2d Cir.1944); *McCarthy v. Commissioner,* 139 F.2d 20, 21–22 (7th Cir.1943); *Denholm & McKay Co. v. Commissioner,* 132 F.2d 243, 246–47 (1st Cir. 1942); *Sweet v. Commissioner,* 120 F.2d 77, 79–81 (1st Cir.1941). In these cases, however, finality itself was not at issue; the petition to rehear or reopen was filed so far out of time that it proved unnecessary for the court of appeals to determine the precise date upon which finality attached to a Tax Court decision. Nonetheless, the reasoning of these opinions seems fully transferable to the matter at bar. And, while this may well be a case of first impression in the sense that the exact issue which is before us has never been the concern of the narrowest reading of the *ratio decidendi* of a court's decision, we find the path to be well lit and the outcome adumbrated by what has gone before. Congress's discernible vision, along with the clarity and consistency of the language employed by the Supreme Court in its relevant decisions, compels us to elect the government's interpretive candidate.

We note, not without a sense of irony, that Congress apparently recognized the desirability of requiring precise dating by means of the finality provisions of the Internal Revenue Code, and wanted the Code's provisions to be interpreted to further that end. *See, e.g.,* H.R.Rep. No. 1, 69th Cong., 1st Sess. (1926) *reprinted in* 1939–1 C.B. [Pt. II] 315, 329 ("it is of utmost importance that th[e] time [in which a decision of the Board of Tax Appeals becomes final] be specified as accurately as possible"); S.Rep. No. 52, 69th Cong., 1st Sess. (1926), *reprinted in* 1939–1 C.B. [Pt. II] 332, 360 (same). Indeed, the legislative history reflects that Congress was willing to go the extra mile: "In some instances in order to achieve the[ ] result [specific and accurate dating] the usual rules of law applicable in court procedure must be changed." H.R.Rep. No. 1, *supra,* 1939–1 C.B. at 329; S.Rep. No. 52, *supra,* 1939–1 C.B. at 360 (same). Put another way, Congress told us from the start that the usual interpretive rules and procedures must at times bend in the face of finality's demands. We have come to believe that this is such an instance.

*Simpson* remains the most persuasive precedent within our ken. There, the taxpayer, an incorporated pawnshop, had not filed special "personal holding company" returns as required by law for the tax years 1934–1936. *Simpson,* 321 U.S. at 226, 64 S.Ct. at 496–97. Consequently, despite the absence of fraud or bad faith, the government imposed not only surtaxes but penalties (which the taxpayer contested). *Id.* The Board of Tax Appeals (predecessor to the present Tax Court) affirmed, 44 B.T.A. 498 (1941), as did the court of appeals, 128 F.2d 742 (2d Cir.1942) (per curiam). The Supreme Court denied certiorari on November 9, 1942. 317 U.S. 677, 63 S.Ct. 158, 87 L.Ed. 543. Thereafter, Simpson filed an out-of-time petition for rehearing; the Court granted it provisional-

---

**3.** The rule, of course, applies to *legitimate* decisions; the cases agree that in those rare instances where fraud on the court has been practiced, the judicial function itself has been undermined and the decision must be reopened to cleanse the process. *See, e.g., Toscano v. Commissioner,* 441 F.2d 930, 933 (9th Cir.1971); *Kenner,* 387

F.2d at 691; *Sweet v. Commissioner,* 120 F.2d 77, 81 (1st Cir.1941). Some courts have used the same rationale to reexamine matters upon discovery of mutual mistake, *see, e.g., La Floridienne J. Buttgenbach & Co. v. Commissioner,* 63 F.2d 630, 631 (5th Cir.1933), but our decisions do not go that far. *See Sweet,* 120 F.2d at 81.

ly and vacated the earlier denial of certiorari, specifically asking counsel to address the issue of the Court's jurisdiction to rehear the case, given, *inter alia*, the finality provisions of the Internal Revenue Code. *Simpson*, 321 U.S. at 227, 64 S.Ct. at 477; *see also* 319 U.S. 778, 63 S.Ct. 1323, 87 L.Ed. 1723 (1943) (order granting rehearing).

Following oral argument, the Court determined that it lacked jurisdiction over a case in which the rehearing petition was filed beyond the 25–day period. 321 U.S. at 230, 64 S.Ct. at 498–99. The Court spoke explicitly to the question of finality and denied itself the inherent authority to rehear tax cases out of time:

> If, therefore, we follow the practice heretofore observed, by which we regard denials of certiorari as qualified until the 25–day period expires, we put the denial and the decision on a generally equal basis except as Congress has seen fit to give the latter ... additional ... days before finality. The Government after consideration of the practical aspects of the question advises that in its view our practice in these matters has been 'salutary and in accordance with sound policy.' There appears to be no good reason, therefore, to hold that the rule as to rehearings, in so far as it permits as matter of right the filing of petition therefor within 25 days, may not apply to this class of cases. But when under our rules our decision has become final, this statute deprives us of jurisdiction over the case.

*Id.* at 229–30, 64 S.Ct. at 498. The lesson of *Simpson* is that the Court's jurisdiction is preserved for the period specified in its rules. Had the Court interpreted the statute literally—"final" means "final," "denial" means "entry of an order denying"—the Court's own rehearing rules could not have endured, inasmuch as the Justices had previously determined that they possessed no jurisdiction to reopen a tax case finally decided. *See Helvering v. Northern Coal*

*Co.*, 293 U.S. 191, 193, 55 S.Ct. 3, 3, 79 L.Ed. 281 (1935) (per curiam).

A hoary decision of this court also assists our inquiry. Well before *Simpson* emerged, Chief Judge Magruder wrote that "in litigation affecting the public revenue the need of finality is the more obvious, from the taxpayer's, as well as from the Government's, point of view." *Sweet*, 120 F.2d at 81. Recognizing that clarity and finality have a symbiotic relationship, Judge Magruder foreshadowed what we might now call a Simpsonesque interpretation: "final" for this purpose may refer not to the date of denial of certiorari (notwithstanding use of the term), but "perhaps [depends] upon the upon the lapse of twenty-five days, .... during which period, under the rules of the Supreme Court, the petitioners might have asked for a rehearing." *Id.* at 80. In our judgment, *Simpson* conclusively proved the accuracy of the *Sweet* augury.[4]

## IV

Hanover nimbly attempts to avoid the embrace of *Simpson*, asseverating that the Court was interested only in jurisdiction, not in the (slightly different) question of when, under the statute, the decision below became final. We do not think *Simpson* can be so blithely dismissed. The Court plainly foretold the outcome of our inquiry by declaring that the statutory finality provisions must be read in conjunction with the rule as to rehearings. *Simpson*, 321 U.S. at 229–30, 64 S.Ct. at 498–99. And, any reasonable doubt as to the gravamen of *Simpson* is extinguished by a reading of the dissent, which makes manifest the degree to which finality was the Court's key concern. *See Simpson*, 321 U.S. at 230, 64 S.Ct. at 498–99 (Douglas, J., dissenting).

Appellant's next initiative—which hinges upon a change in the Supreme Court's rules—strikes us as sorely misdirected.

---

**4.** *Sweet* dealt with section 1005(a)(3) of the Revenue Act of 1926; *Simpson* focused upon section 1140(b)(2) of the Internal Revenue Code of

1940. These earlier statutes used materially identical language—language no different in

Rule 23.3,[5] upon which Hanover relies, is merely a notification provision, without substantive effect. We find ourselves at a loss to understand how notification anent a decision can be construed to affect the decision's finality. *Cf. Flynn v. United States,* 75 S.Ct. 285, 286, 99 L.Ed. 1298 (1955) (although denial of certiorari not definitive until rehearing period elapses, "there is no reason for withholding notification of the denial of a petition for certiorari for the full duration afforded for the filing of a petition for rehearing") (Frankfurter, J., opinion in chambers).

We are bolstered in our conclusion by the carefully-chosen language of Rule 23.3. Under *Simpson,* there is no suggestion that the Court's order denying certiorari is "suspended." To the contrary, the order takes effect and begins the running of the 25-day period during which a rehearing motion may be lodged. But, the order is qualified—that is, subject to vacation—in order to preserve the integrity of the Court's rehearing rules. In that sense, the order is "limited; restricted; ... or temporary," *Black's Law Dictionary* 1117 (5th ed. 1979) (defining "qualified"), but not "interrupt[ed] ... postpone[d] ... or stay[ed]." *Id.* at 1297 (defining "suspended"). As we see it, qualification is a potential and partial limit for a particular purpose, whereas suspension works a delay of the entire decision for all purposes. *See, e.g., Richmond v. Arizona,* 434 U.S. 1323, 1325, 98 S.Ct. 8, 9–10, 54 L.Ed.2d 34 (1977) (Rehnquist, Circuit Justice) (opinion in chambers on motion for rehearing of order denying certiorari).

Hanover also argues that its reading of section 7481 promotes certainty in the ad-ministration of the assessment/collection process, thus furthering Congress's intent. But, this argument possesses two major flaws. For one thing, courts have long reasoned that Congress intended "final," as used throughout what is now section 7481, to mean "that at the indicated point of time the decision of the [Tax Court] must stand as rendered, *without power ... in the courts to modify it thereafter.*" *Sweet,* 120 F.2d at 81 (emphasis supplied); *see also Kenner,* 387 F.2d at 690 ("Finality accrues promptly after the exhaustion of the possibilities of direct review."); *Claremont Waste Mfg. Co. v. Commissioner,* 238 F.2d 741, 744 (1st Cir.1956) (" 'final' in this connection means final in an absolute and literal sense; at the indicated point of time tax consequences of the decision by the Tax Court became irrevocably fixed ... without power in the Tax Court or in any other court to modify it thereafter"). Given the precedential trail, continuing to define finality in this way advances congressional intent, rather than undermining it.

For another thing, Hanover's interpretation does not bring any greater measure of certitude to the process. We offer a few examples. (1) Beginning the count before the time for the Court to rectify its own mistakes has passed ignores the error-correcting function and, potentially, squanders resources, *e.g.,* by requiring assessments to be made unnecessarily. While rehearings may be rare, they are certainly not unprecedented; as Justice Frankfurter admonished, "[t]he right to such a consideration is not to be deemed an empty formality as though such petitions will as a matter of course be denied." *Flynn,* 75 S.Ct. at 286.[6] (2) If, notwithstanding the start of the

---

any relevant respect from that contained in the present section 7481(a)(2)(B).

**5.** The rule provides in pertinent part (with respect to orders denying certiorari):
> The order of denial will not be suspended pending disposition of a petition for rehearing....

Sup.Ct.R. 23.3. The rule was adopted in 1980. That it is strictly a notice provision is not much in doubt. It is a direct lineal descendant of former Rule 25.2, which provided that *"notification* [of denial of certiorari] will not be withheld pending disposition of a petition for rehear-ing...."* (emphasis supplied). *See* 13 J. Moore, H. Bendix & B. Ringle, *Moore's Federal Practice* ¶ 823.02 (2d ed. 1988). Hanover offers no basis for an argument that present Rule 23.3 was designed to change the substantive meaning of the previous rule.

**6.** According to one report, roughly 0.8% of rehearing petitions filed during the period 1976–1982 were granted. *See* Stern, Gressman & Shapiro, *Supreme Court Practice* 624 (6th ed. 1986) (tabulating grants of rehearing in nonindigent cases).

count, the Court would retain its capacity to rehear cases for the 25–day period, section 7481(a)(2)(B) would become meaningless in cases where rehearing was granted. To that extent, Congress's evident desire for finality and predictability would be unfulfilled, indeed, thwarted. (3) The practical ramifications of Hanover's alternative interpretation are extremely murky. If a decision become final upon denial, but the period for rehearing remains operative, when does the statute of limitations begin its march if rehearing is granted? When, if a timely rehearing petition is taken under advisement? Assuming (favorably to Hanover) that such problems could readily be solved in future litigation, there is little to be said for a rule which creates such ample opportunity to construct caselaw castles in the air. The precision Congress concededly sought was meant to stem, not encourage, hypertechnical litigation.

## V

■ We need go no further. Because "the denial of a petition for certiorari should not be treated as a definitive determination" in the Supreme Court until the period for filing a rehearing petition has expired, *Flynn*, 75 S.Ct. at 286, we believe that Congress, when it used the term "denial" in 26 U.S.C. § 7481(a)(2)(B), meant that word to connote the time when the act became unalterable. As courts before us have done in related contexts, we thus recognize that a decision of the Tax Court is not final in the requisite sense until it can no longer be modified, that is, until the time to file for rehearing of a denial of certiorari has passed. In this case, therefore, the date of the Supreme Court's "denial of a petition for certiorari" under 26 U.S.C. § 7481(a)(2)(B) meant the date upon which the Rule 51 rehearing period expired, unused. Accordingly, the IRS seasonably perfected its assessment against Hanover.

*Affirmed.*