MICHAEL L. AROUTH AND PHYLLIS A. AROUGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT G. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Arouth
Docket Nos. 7242-91, 12113-91
United States Tax Court
T.C. Memo 1992-679; 1992 Tax Ct. Memo LEXIS 727; 64 T.C.M. (CCH) 1390; November 25, 1992, Filed *727 Decisions will be entered under Rule 155. For Petitioners in docket No. 7242-91: Justin S. Holden. For Petitioner in docket No. 12113-91: Harold C. Arcaro, Jr.
For Respondent: Michael P. Breton. SWIFT
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Michael L. Arouth and Phyllis A. Arouth, Docket No. 7242-91
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6653(b)(1)(A)
6653(b)(1)(B)
6661
1984
$ 19,118
$ 9,559  **
$ --    --
$ 4,779 1985
46,845
23,422 **
--    --
11,711
1986
* 29,488
--  --
17,057 **
7,372
*728 Robert G. Johnson, Docket No. 12113-91
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6653(b)(1)(A)
6653(b)(1)(B)
6661
1984
$ 18,640
$ 9,320 **
$ --    --
$ 4,660 1985
50,534
25,267
**
-- --
12,633
1986
17,783
--
--
13,337
**
4,446
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the primary issues remaining for decision are: (1) Whether Michael L. Arouth (Arouth) is liable for the fraud additions to tax for 1984, 1985, and 1986; (2) whether Robert G. Johnson (Johnson) is liable for the fraud additions to tax for 1984, 1985, and 1986; and (3) the amount of income Arouth and Johnson received in 1984, 1985, and 1986 from the sale of stolen prescription drugs. *729 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Arouth, Phyllis A. Arouth (Mrs. Arouth), and Johnson lived in Cumberland, Rhode Island, at the time their petitions were filed in these consolidated cases. Arouth has a bachelor's degree in pharmacy. From 1976 through 1986, Arouth was licensed as a pharmacist by the State of Rhode Island, and he owned and operated a pharmacy in Cumberland, Rhode Island. Johnson is a high school graduate. During the years 1969 through 1988, Johnson worked as a delivery person and supervisor for United Parcel Service (UPS). Sometime in 1976, Arouth informed Johnson that he had just opened a pharmacy. Arouth suggested that Johnson might be able to help with the pharmacy by occasionally stealing packages shipped through UPS that contained valuable prescription drugs. Beginning in 1976 through 1986, Johnson stole from UPS packages that contained prescription drugs and turned the drugs over to Arouth. Johnson would look for packages with address labels identifying the shippers as pharmaceutical companies such as Merck & Co., Inc., and Knoll Pharmaceuticals. After identifying packages from pharmaceutical companies, Johnson *730 in private would generally open the packages, and, if the packages contained drugs, he would remove the drugs and deliver them to Arouth. Occasionally, when he was not able to personally deliver the stolen drugs to Arouth, Johnson would paste labels reflecting Arouth's address over the original address labels on the packages so that the packages would be delivered through UPS to Arouth. Within a few weeks after receiving the stolen drugs, Arouth would sell the drugs for cash, and Arouth would pay Johnson a percentage of the proceeds in cash. It is not clear from the record what percentage of the proceeds from the sale of the stolen drugs was kept by Arouth and what percentage was paid to Johnson. In 1985, Johnson became aware that Arouth was not selling all of the stolen drugs through the pharmacy but that Arouth instead was selling a significant portion of the stolen drugs on the black market. Johnson therefore requested that Arouth increase Johnson's percentage of the sale proceeds. Arouth apparently acquiesced and increased Johnson's percentage by an amount that is not disclosed in the record. In response to Arouth's request for more stolen drugs, Johnson fabricated a story *731 that he had a partner named "Chico" who assisted Johnson in stealing drugs from UPS. During the same years that Arouth was selling drugs stolen from UPS, Arouth also was involved in a scheme with three State of Rhode Island Department of Health (Department of Health) inspectors named Richard Ferrucci (Ferrucci), John Barry (Barry), and Ray Palmer (Palmer) to illegally obtain prescription drugs from local nursing homes and hospitals. In their positions as health inspectors, Ferrucci, Barry, and Palmer would obtain and then sell to Arouth discontinued and outdated prescription drugs that, under the law, should have been destroyed. Arouth sold the illegally obtained prescription drugs through his pharmacy and for cash on the black market. Arouth also dispensed some of the illegally obtained prescription drugs to one or more women in exchange for sexual favors. Arouth shared equally with Barry and Palmer (one-third each) the proceeds from the sale of the drugs illegally obtained from nursing homes and hospitals. Arouth paid Ferrucci for his part in obtaining the prescription drugs by giving Ferrucci "credit" at the pharmacy. Ferrucci also provided Arouth with blank medical prescription *732 forms that he had stolen from the Department of Health on which forms he and Arouth forged local doctors' signatures. Apparently, Arouth used the forms to provide cover for the drugs he had sold on the black market. In August of 1986, pursuant to an informant's tip that Arouth was illegally selling prescription drugs, agents of the Cumberland, Rhode Island, Police Department and agents of the Drug Enforcement Administration (DEA) conducted an undercover investigation of Arouth. The agents discovered that Arouth, Ferrucci, Barry, and Palmer were involved in selling the prescription drugs that they had illegally obtained from nursing homes and hospitals. The agents also discovered that Arouth and Ferrucci had forged doctors' signatures on stolen medical prescription forms and that Arouth had illegally dispensed prescription drugs in exchange for sexual favors. In March of 1988, Arouth pled guilty to charges of illegal possession and sale of controlled substances (namely, the various prescription drugs) in connection with his involvement in the scheme with Ferrucci, Barry, and Palmer. Arouth was sentenced to 3 years in prison and fined $ 10,250. In October of 1988, agents of UPS *733 conducted an investigation to determine who was stealing the packages of prescription drugs that were shipped through the Cumberland, Rhode Island, UPS facility. The agents discovered that from 1979 through 1986, Johnson had stolen at least 26 packages shipped through the Cumberland, Rhode Island, UPS facility. When confronted by UPS agents, Johnson admitted to stealing the packages and disclosed Arouth's involvement in the scheme. UPS fired Johnson and filed a complaint which resulted in Federal criminal charges being brought against Johnson. In January of 1989, Johnson pled guilty to charges of conspiracy to possess and distribute schedule II controlled substances (namely, Dilaudid and Percodan) in connection with his involvement with Arouth in the theft and sale of prescription drugs. Johnson was sentenced to 1 year in prison and fined $ 5,050. Johnson also was required to pay restitution in the amount of $ 19,960 to UPS. The $ 19,960 restitution amount was estimated to be the wholesale cost of the prescription drugs stolen by Johnson. Mr. and Mrs. Arouth timely filed joint Federal income tax returns for 1984, 1985, and 1986. Mr. and Mrs. Arouth reported thereon wages, *734 interest, dividends, and other income, as follows: Year
Gross Income
1984
$ 41,941
1985
43,453
1986
45,372
During 1976 through 1986, Arouth did not keep records of the cash proceeds he received from the sale of stolen and illegally obtained drugs, and Arouth did not report those proceeds as income on his Federal income tax returns. Further, Arouth did not report as constructive income the value of the sexual favors he received in exchange for illegally dispensing certain prescription drugs. Johnson timely filed individual Federal income tax returns for 1984 and 1985. Johnson and his wife timely filed a joint Federal income tax return for 1986. During the years in issue, Johnson reported wages, interest, and dividends on his Federal income tax returns, as follows: Year
Gross Income
1984
$ 48,875
1985
50,459
1986
56,119
During 1976 through 1986, Johnson did not keep records of the cash proceeds he received from the sale of stolen drugs, and Johnson did not report the proceeds therefrom on his Federal income tax returns. Using statements made by Arouth and Johnson to DEA and to respondent's agents, and using UPS records, respondent determined that during *735 1984 through 1986, the following prescription drugs were stolen by Johnson from UPS, and the following proceeds were received by Arouth and Johnson from the sale of the drugs stolen from UPS: Total
Date
Drug Name
Quantity
Proceeds Per Pill *
Sales Proceeds
1/84
Percodan
30,000
$ 1
$ 30,000 6/84
Percodan
14,400
1
14,400
7/2/85
Dilaudid 2mg
2,400
5
12,000
7/2/85
Dilaudid 4mg
7,000
10
70,000
10/16/85
Dilaudid 1mg
300
2
600
10/16/85
Dilaudid 2mg
2,400
5
12,000
10/16/85
Dilaudid 4mg
1,200
10
12,000
2/20/86
Dilaudid 1mg
1,200
2
2,400
2/20/86
Dilaudid 4mg
600
10
6,000
11/4/86
Dilaudid 2mg
600
5
3,000
11/4/86
Dilaudid 3mg
600
7
4,200
11/4/86
Dilaudid 4mg
3,300
10
33,000
Total sales proceeds
1984 through 1986
$ 199,600
*736 In notices of deficiency dated March 22, 1991, respondent took a protective position and determined that for the years in issue, Arouth and Johnson were each separately liable for taxes and additions to tax based upon the full amount of the proceeds from the sale of the prescription drugs stolen from UPS. On brief, however, respondent takes the position that for the years in issue, Arouth and Johnson each should be liable for the taxes and additions to tax on one-half of the proceeds. Respondent also determined that during the years in issue Arouth received taxable income from the sale of drugs illegally obtained from nursing homes and hospitals. Arouth concedes that he received this income. Arouth, however, contests the fraud additions to tax with respect to this income. OPINION Fraud Addition to Tax
For 1984 and 1985, section 6653(b)(1) provides for an addition to tax equal to 50 percent of the underpayment if any part of an underpayment of tax is due to fraud. For 1986, section 6653(b)(1)(A) provides for an addition to tax equal to 75 percent of the portion of the underpayment, if any, that is attributable to fraud. For 1984 and 1985, section 6653(b)(2), and for *737 1986, section 6653(b)(1)(B) provide an additional amount equal to 50 percent of the interest payable under section 6601 on the portion of the underpayment attributable to fraud. Respondent bears the burden of establishing fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). See also United States v. Rexach, 482 F.2d 10, 31 (1st Cir. 1973); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). Fraud raises a question of fact to be resolved upon consideration of the entire record. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent must prove both that an underpayment of tax exists and that the taxpayer intended to evade paying the correct tax. United States v. Rexach, supra; Parks v. Commissioner, supra.
Fraudulent intent may be established by circumstantial evidence because direct proof of a taxpayer's intent is rarely available. Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), *738 affg. a Memorandum Opinion of this Court dated March 14, 1951; Truesdell v. Commissioner, 89 T.C. 1280, 1301-1302 (1987); Rowlee v. Commissioner, supra. Fraudulent intent may be inferred from the taxpayer's entire course of conduct. Spies v. United States, 317 U.S. 492, 499 (1943); Recklitis v. Commissioner, supra; Truesdell v. Commissioner, supra at 1302. Some of the evidence that typically supports a finding of fraud includes the following badges of fraud: Participating in illegal activity; attempting to conceal illegal activity; dealing in cash; keeping inadequate records; understating income; and giving implausible or inconsistent explanations of the tax understatements. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, supra at 910. See also Badaracco v. Commissioner, 464 U.S. 386 (1984); Lollis v. Commissioner, 595 F.2d 1189 (9th Cir. 1979), *739 affg. T.C. Memo. 1976-15. In these cases, the parties agree that respondent issued the notices of deficiency to petitioners more than 3 years after petitioners filed their respective Federal income tax returns for 1984, 1985, and 1986. Respondent, however, contends that she is not barred from assessing deficiencies in petitioners' Federal income taxes because petitioners filed false Federal income tax returns for 1984, 1985, and 1986 with the fraudulent intent to evade paying their Federal income taxes. Arouth and Johnson concede that during the years in issue they received income from the sale of the drugs stolen from UPS. They disagree, however, as to the percentage of the proceeds from the sale of the stolen prescription drugs that they each received. Petitioners also assert that they are not liable for the fraud additions to tax. As we have found, Arouth sold stolen and illegally obtained drugs both through his pharmacy and on the black market, and he failed to keep records of the cash proceeds he received therefrom. Further, over a period of 10 years, Arouth consistently failed to report the income from the sale of the drugs stolen from UPS and *740 from the drugs illegally obtained from nursing homes and hospitals. Arouth admitted at trial that he knew that he was required to report on his Federal income tax returns the income received from the sale of the stolen and illegally obtained drugs but that he failed to do so in order to conceal his criminal activities. The evidence in these cases establishes that during each of the years in issue, Arouth underreported his income from the sale of the stolen and illegally obtained drugs with the intent to evade paying his correct Federal income taxes. For each of the years in issue, the entire underpayment of tax with respect to the unreported income from the sale of the stolen and illegally obtained drugs was attributable to fraud. We hold that Arouth is liable for the fraud additions to tax for each of the years in issue. Johnson stole packages of prescription drugs from UPS and failed to maintain records of his income from the sale of the stolen drugs. Over a period of 10 years, Johnson consistently failed to report on his Federal income tax returns his income from the sale of the stolen drugs. The evidence in these cases establishes that during each of the years in issue *741 Johnson underreported his income from the sale of the stolen drugs with the intent to evade paying his correct Federal income taxes. For each of the years in issue, the entire underpayment with respect to the unreported income from the sale of stolen drugs was attributable to fraud. We hold that Johnson is liable for the fraud additions to tax for each of the years in issue. In light of our holding that petitioners' failure to report income from the sale of stolen prescription drugs in each of the years in issue was due to fraud, the statute of limitations does not bar the assessment of deficiencies in petitioners' Federal income taxes for 1984 through 1986. Sec. 6501(c)(1); Hanover Ins. Co. v. United States, 880 F.2d 1503, 1504-1505 (1st Cir. 1989); Coleman v. Commissioner, 94 T.C. 82, 89 (1990); Blount v. Commissioner, 86 T.C. 383, 386 (1986). Unreported Income
Respondent asserts that for the years in issue each petitioner (Arouth and Johnson) should be treated as having received 50 percent of the total proceeds from the sale of the prescription drugs stolen from UPS. Arouth, *742 however, claims that the sales proceeds were split three ways between himself, Johnson, and "Chico", and therefore that he (Arouth) should be treated as having received only one-third of the total sales proceeds. Johnson claims that he and Arouth had no agreement regarding the amount that Johnson was to be paid for the stolen drugs and that the amount Johnson was paid was only "what [Arouth] wanted to give" him. Johnson also claims that during the years in issue he received only $ 12,500 of the sales proceeds, as follows: $ 3,500 in 1984; $ 7,500 in 1985; and $ 1,500 in 1986. In interviews with DEA and respondent's agents, Arouth lied several times about the amount of the proceeds he received from the sale of the stolen drugs. Arouth's testimony is inconsistent, vague, and generally not credible. We reject Arouth's testimony that the sales proceeds were split three ways between himself, Johnson, and "Chico". Johnson's testimony likewise was inconsistent and not credible. It is particularly incredible that Johnson now purports to remember the exact amount of the sales proceeds he received during each of the years in issue. There allegedly was no specific agreement between Arouth *743 and Johnson as to how to split the sales proceeds, and Johnson has no memory of how many packages of drugs were stolen during the years in issue. In light of the absence of records and the unreliable testimony, it is appropriate to approximate the respective percentages of the sales proceeds that each petitioner received. See Cannon v. Commissioner, 533 F.2d 959, 960-961 (5th Cir. 1976), affg. Ash v. Commissioner, T.C. Memo. 1974-219; Puppe v. Commissioner, T.C. Memo. 1988-311. See also Schaffer v. Commissioner, 779 F.2d 849 (2d Cir. 1985), affg. in part, revg. in part, and remanding Mandina v. Commissioner, T.C. Memo. 1982-34; Gerardo v. Commissioner, 552 F.2d 549 (3d Cir. 1977), affg. in part, revg. in part, and remanding T.C. Memo. 1975-341; Reid v. Commissioner, T.C. Memo. 1989-407; Barber v. Commissioner, T.C. Memo. 1980-39, affd. without published opinion 679 F.2d 896 (9th Cir. 1982). *744 Both petitioners actively participated in the scheme to steal the prescription drugs from UPS, and both appear to have shared equally the risks of getting caught. In his dealings with Ferrucci, Barry, and Palmer, Arouth generally shared equally the sales proceeds and, in the absence of any evidence of a specific agreement to the contrary, it appears likely that Arouth also shared equally the sales proceeds with Johnson. Based upon the entire record before us and upon petitioners' failure to introduce any credible evidence regarding the split of the sales proceeds, we find that petitioners equally shared in the sales proceeds. For each of the years in issue, each petitioner is liable for the tax on an amount equal to 50 percent of the total proceeds from the sale of the drugs stolen from UPS. Respondent also determined that petitioners are liable for additions to tax under section 6661. Petitioners have not presented any evidence regarding the section 6661 additions to tax, and consequently, we sustain respondent's determination on this issue. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent determined that Mrs. Arouth is *745 liable for a section 6653(a)(1)(A) and (B) negligence addition to tax for 1986. As Mrs. Arouth did not present any evidence relating to this issue, we sustain respondent's determination that Mrs. Arouth is liable for a negligence addition to tax. Decisions will be entered under Rule 155. Footnotes
*. Respondent determined that Phyllis A. Arouth is not liable for any of the deficiencies in tax or additions to tax for 1984 and 1985 and that her liability for 1986 is limited to $ 6,746 of the deficiency for 1986, plus an addition to tax under sec. 6653(a)(1)(A) in the amount of $ 337 and an addition to tax under sec. 6653(a)(1)(B) equal to 50 percent of the interest due on the portion of the deficiency attributable to negligence, and an addition to tax under sec. 6661 in the amount of $ 1,686. ** 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
**. 50 percent of the interest terest due on the portion of the underpayment attributable to fraud.↩
*. The sale proceeds per pill reflected in the above table are the prices at which Arouth claims to have sold the stolen prescription drugs he received from Johnson. At trial, respondent's expert witness testified that the actual street value of Percodan and Dilaudid is several dollars higher per pill than the price at which Arouth claims to have sold the drugs. Respondent, however, has not attempted to adjust the deficiency determinations in the instant cases to reflect the higher street value testified to by respondent's expert.↩